RON QUIJADA (SBN 363726)
LAW OFFICES OF RON QUIJADA
750 E. GREEN STREET, SUITE 302
PASADENA, CA 91101
TELEPHONE: (626) 437-0724
FACSIMILE: (626) 604-8329
E-MAIL: RON@QUIJADALEGAL.COM

ATTORNEY FOR PETITIONER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CARLOS ARQUIME PORTILLO NUNEZ**<br><br>Petitioner,<br><br>vs.<br><br>**FERETI SEMAIA, Warden, Adelanto ICE Processing Center; JAIME RIOS, Field Office Director, Los Angeles Field Office, ICE; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States,**<br><br>Respondents | Case No.: 5:26-cv-6008<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**A# 071-585-425** |

## INTRODUCTION

1. Petitioner CARLOS ARQUIME PORTILLO NUNEZ is a native and citizen of EL SALVADOR who has been physically present in the United States since approximately 1991.

2. Petitioner is currently detained at the ADELANTO ICE PROCESSING CENTER in Adelanto, California by immigration authorities and is the subject of a pending removal proceedings.

3. Petitioner brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his unlawful arrest and detention by the United States Immigration and Customs Enforcement ("ICE").

4. On April 21, 2026, Petitioner was arrested by agents of U.S. Immigration and Customs Enforcement ("ICE"). Petitioner was arrested by immigration authorities in the Desert Hot Springs, California.

5. At the time of his arrest, Petitioner was not committing a crime and there was no indication that he was about to commit a crime.

6. Petitioner was arrested without a pre-arrest warrant. He was given no notice of his impending arrest.

7. Before ICE arrested Petitioner, they had his information because he was in placed in removal proceedings in 2008. In 2014, an immigration judge granted Petitioner a bond in the amount of $5000. In 2018, immigration approved a spouse petition on his behalf, and in 2023, an immigration judge dismissed Petitioner's immigration proceedings. The Government has therefore known Petitioner and his immigration history all these years.

8. Petitioner's detention is unlawful because it

(1) violates 8 U.S.C. §§ 1226(a) and 1357(a)(2);

(2) violates his right to procedural due process under the Fifth Amendment;

(3) violates his right to substantive due process under the Fifth Amendment.

9. Accordingly, Petitioner seeks a writ of habeas corpus ordering his immediate release from ICE custody because his continued detention.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction under 28 U.S.C. § 2241 (federal habeas statute); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201-2 (declaratory judgment). This his action arises under the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act (INA), United States Constitution Article I, Section 9 (Suspension Clause).

11. Venue is proper in the Central District of California under 28 U.S.C. § 2241 because Petitioner is currently detained within this District at the Adelanto ICE Processing Center. Venue properly lies within the Central District of California under 28 U.S.C.§ 1391, because this is a civil action in which Respondents are agencies of the United States, Petitioner is detained in this District, and a substantial part of the events or omissions giving rise to this action occurred in the district.

**PARTIES**

12. Petitioner CARLOS ARQUIME PORTILLO NUNEZ is currently detained at the ADELANTO immigration detention center in Adelanto, California.

13. Respondent, FERETI SEMAIA, is the warden of Adelanto Detention Center, and is sued in his official capacity. The Adelanto Detention Center has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner.

14. Respondent, JAIME RIOS, is the ICE Field Office Director of the Los Angeles ICE Field Office and is sued in his official capacity. ICE Filed Office Director is responsible for the detention of Petitioner.

/ / /

/ / /

15. Respondent TODD LYONS is the Acting Director of U.S. Immigration and Customs Enforcement (ICE) and is sued in HIS official capacity. ICE is responsible for the detention of Petitioners.

16. Respondent MARKWAYNE MULLIN is the Secretary of the Department of Homeland Security ("DHS"), and is sued in his official capacity. The Secretary of Homeland Security is charged with the administration and enforcement of immigration laws. 8 U.S.C. § 1103(a).

17. Respondent TODD BLANCHE is the Attorney General of the United States and is sued in his official capacity as the head of the Department of Justice. The Attorney General is responsible for the fair administration of the laws of the United States.

## STATEMENT OF FACTS

18. Petitioner is a native and citizen of El Salvador currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center. ***See*** **https://locator.ice.gov/odls/**

19. Prior to his detention, Petitioner continuously resided at 15687 Pal Drive, SP 68, Desert Hot Springs, CA 92240 since 2015. Petitioner lived with his wife a U.S. Citizen Mariana Portillo, his U.S. Citizen daughter Kaitlin Portillo, and his son Mathew Portillo.

20. Prior to his detention, Petitioner was self-employed in the landscaping industry in Desert Hot Springs, California. Petitioner has been doing landscaping for approximately 11 years.

## IMMIGRATION HISTORY

21. Petitioner last entered the United States on or about January 30, 2014 in San Ysidro, California and was paroled into the United States. **(See Exhibit 1 – I-213 Record of Deportable Inadmissible Alien)**

22. Petitioner entered without inspection in 1991.

///

23. In the year 1991, Petitioner filed for an asylum application. In 2008, his asylum application was denied and he was placed in removal proceedings. ***Id.***

24. On December 3, 2008, an immigration judge ordered removal to El Salvador.

25. On January 31, 2014, Petitioner was paroled into the United States. On September 10, 2014, Petitioner was arrested by ICE and then on September 30, 2014, an immigration judge granted Petitioner a bond in the amount of $5000.

26. Petitioner was released on September 06, 2014. ***Id.***

**SPOUSE PETITIONER**

27. On November 07, 2016, Mariana his spouse filed an I-130 a petition for alien relative, which was approved in 2018. ***Id.***

28. On July 12, 2023, an Immigration Judge dismissed Petitioner immigration proceedings. On August 9, 2023, an immigration judge dismissed Petitioner's immigration proceedings. Since his release, Petitioner has continuously resided in the United States without checking with ICE.

**ICE DETENTION**

29. On or about April 21, 2026, Petitioner was arrested by ICE. **(See Exh. 1).**

30. At the time Petitioner was taken into custody, he was traveling to work, was not attempting to flee, was not committing a crime, and was not threatening or endangering anyone.

31. The form I-213 "government own records" state they were doing a fugitive operation to locate Carlos Portillo Nunez at his last known address. However, nothing in the own government's records show that Respondents had an arrest warrant.

32. In fact, Petitioner's immigration case was dismissed on July 12, 2023 and the ICE canceled his bond due to his immigration case being dismissed.

/ / /

33. After Petitioner was arrested by ICE, he was issued notice to appear and charged removability pursuant to section 212(a)(7)(A)(i)(I).

## LEGAL BACKGROUND

34. The following legal principles govern Petitioner's claims for habeas corpus relief. Although Congress has authorized the Executive Branch to arrest and detain certain noncitizens under the Immigration and Nationality Act ("INA"), that authority remains subject to the Constitution, federal statutes, and longstanding principles governing executive detention. As discussed below, the Great Writ of habeas corpus provides the traditional means by which federal courts review the legality of immigration detention and remedy constitutional violations.

### A. Detention of Non-Citizens Under the INA

35. The Immigration and Nationality Act (INA) prescribes distinct forms of detention for noncitizens in removal proceedings, distinguished primarily by the status of the noncitizen at the time of apprehension.

36. First, 8 U.S.C. § 1226 authorizes detention of noncitizens in standard removal proceedings before an immigration judge. Individuals detained under § 1226(a) are entitled to a bond hearing to determine eligibility for release. 8 C.F.R. §§ 1003.19(a), 1236.1(d). Noncitizens who have been admitted, or who are physically present in the interior of the United States, are subject to detention under § 1226(a).

37. Second, noncitizens arrested, charged with, or convicted of specified criminal offenses are subject to mandatory detention under 8 U.S.C. § 1226(c).

38. Third, the INA mandates detention for noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1), and for other recent arrivals seeking admission under § 1225(b)(2). These provisions are designed for the border context and for individuals seeking admission.

/ / /

/ / /

39. Finally, the Act provides for detention of noncitizens previously ordered removed, including those in withholding-only proceedings. 8 U.S.C. § 1231(a)–(b).

**B. Habeas Corpus is the Traditional Means of Challenging Unlawful Executive Detention**

40. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004).

41. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to a petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).

42. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A noncitizen in immigration custody may bring a § 2241 petition on the ground that his detention violates the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

43. The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence. *Walker v. Johnston,* 312 U.S. 275, 286 (1941) ("On a hearing, [the § 2241 petitioner has] the burden of

sustaining his allegations by a preponderance of evidence."); *Parke v. Raley,* 506 U.S. 20, 31 (1992); *Sumner v. Mata,* 449 U.S. 539, 551 (1981).

**C. Civil Immigration Detention is Subject to Constitutional Limitations**

44. Congress has authorized immigration detention under several provisions, including 8 U.S.C. §§ 1226 and 1231. That authority is not unlimited. Immigration detention is civil, not criminal, and remains subject to the Constitution's constraints.

45. The Supreme Court has repeatedly recognized that civil immigration detention serves limited regulatory purposes, principally ensuring a noncitizen's appearance at removal proceedings and protecting the community from danger. Because immigration detention is regulatory rather than punitive, continued detention must bear a reasonable relationship to those legitimate governmental interests. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527-28 (2003); *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

**D. The Fifth Amendment Requires Constitutionally Adequate Procedures before the Government May Deprive an individual of Physical Liberty**

46. The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id*. at 690; see also *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected

interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

47. A procedural due process claim involves two inquiries: first, whether the challenged government action implicates a protected liberty interest; second, if so, what process is constitutionally due before that interest may be taken. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); accord *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property" (emphasis in original)).

48. Where a protected liberty interest is at stake, courts apply the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

49. In *Mathews*, the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335; see *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context");

50. Because the government's discretion to detain individuals under 8 U.S.C. § 1226(a), and to revoke custody decisions under § 1226(b), is not "unlimited," that discretion must comport with the Mathews framework and constitutional due process more broadly. *Zadvydas*, 533 U.S. at 698.

/ / /

**E. An Arrest Warrant is Required**

51. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings.

52. The Statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

53. Under 8 C.F.R. §236.1(b)(1), a noncitizen may only be arrested and detained pursuant to the Form I-200 Administrative Warrant if it is issued by an authorized official: At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest.

54. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter. 8 C.F.R. § 236.1(b)(1).

**F. A warrantless arrest is valid if the government satisfies the limited exceptions under 8 U.S.C. § 1357(a)(2)**

55. Immigration officers are authorized to make warrantless arrests in limited circumstances. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation ... regulating the admission, exclusion, expulsion, or removal of aliens," or when an officer has reason to believe (i) the noncitizen is in the United States in violation of such laws or regulations and (ii) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4) – (5) (providing other circumstances that justify warrantless arrest).

/ / /

/ / /

/ / /

**COUNT ONE**

***Arrest and Detention in Excess of Statutory Authority***

***(Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2))***

56. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

57. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). When immigration officers proceed without a warrant, their authority is substantially narrower. *Arizona v. United States*, 567 U.S. 387, 407 (2012).

58. Under 8 U.S.C. § 1357(a)(2), immigration officers may conduct a warrantless arrest only where they have reason to believe both that the noncitizen is present in violation of the immigration laws and that the noncitizen "is likely to escape before a warrant can be obtained for his arrest." See also 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

59. Respondents failed to satisfy those statutory prerequisites.

60. Here, Respondents' own Form I-213 establishes that ICE conducted a planned fugitive enforcement operation for the specific purpose of locating Petitioner at his last known residential address. Respondents therefore possessed identifying information about Petitioner, including his identity, immigration history, and last known residence, before undertaking the enforcement operation. **(See Exhibit 1.)**

61. Indeed, ICE had maintained records concerning Petitioner for years, including his prior removal proceedings, his 2014 immigration custody and bond proceedings, and the dismissal of his immigration proceedings in 2023.

62. Respondents were therefore not responding to an unexpected encounter with an unidentified individual whose whereabouts were unknown.

63. Notwithstanding this advance knowledge, the Form I-213 does not identify an arrest warrant issued before Petitioner's apprehension. Based on the records presently available, ICE officers arrested him without first obtaining an administrative arrest warrant.

64. Furthermore, nothing in the presently available Government records identifies specific circumstances demonstrating that Petitioner was likely to escape before a warrant could be obtained. Petitioner had continuously resided at the same address since 2015, maintained longstanding employment in the landscaping industry, and lived with his United States citizen spouse and children. He was granted bond on September 30, 2014. **See Exhibit 1 -page 3.**

65. On April 21, 2026, Petitioner was traveling to work when ICE officers apprehended him. He was not attempting to flee, was not committing a crime, and did not threaten or endanger the arresting officers or anyone else. Nothing in the presently identified circumstances demonstrates an immediate necessity to arrest Petitioner before obtaining a warrant.

66. The planned nature of the operation further undermines any contention that Respondents lacked a reasonable opportunity to obtain an administrative arrest warrant. Having identified Petitioner and his last known residence in advance, ICE could have pursued the ordinary administrative warrant process instead of relying on the limited exception authorized by § 1357(a)(2).

67. In *Reyna Martinez v. Mullin*, No. 5:26-cv-03850-MAR (C.D. Cal. Oct. 2, 2026), the district court granted habeas relief and ordered immediate release where ICE failed to justify a warrantless immigration arrest under § 1357(a)(2). That decision supports Petitioner's contention that the statutory requirements governing immigration arrests are enforceable through habeas proceedings.

68. Furthermore, Respondents do not make a show that Petitioner was likely to escape before a warrant could be obtained. Nothing in the I-213 states that Petitioner was likely to escape before a warrant could be obtained. See *Vasquez Perdomo v. Mullin,* Case No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Sept. 2, 2026).

69. Because the presently available record identifies neither a preexisting arrest warrant nor particularized facts establishing that Petitioner was likely to escape before one could be obtained, Petitioner contends that his arrest violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii).

70. Petitioner therefore respectfully requests that this Court determine that his warrantless arrest violated governing federal law and order his immediate release to the extent that his present confinement remains unlawful as a result of that violation.

## COUNT TWO

### *Violation of the Fifth Amendment*

### *Procedural Due Process*

71. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

72. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

73. The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas,* 533 U.S. at 693.

74. The Due Process Clause mandates constitutionally adequate procedures before the government may deprive an individual of liberty through civil detention. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine

whether the procedures afforded were constitutionally sufficient, courts balance three factors: (1) the private liberty interest at stake; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards; and (3) the government's interest. *Id.*

75. While the government has discretion to detain individuals under 8 U.S.C. § 1226(a) and to revoke custody decisions under 8 U.S.C. § 1226(b), this discretion is not "unlimited" and must comport with constitutional due process. See *Zadvydas*, 533 U.S. at 698.

76. Applied here, all three Mathews factors weigh decisively in Petitioner's favor.

77. Here, an immigration judge previously granted Petitioner release on a $5,000 bond on September 30, 2014. Petitioner thereafter remained at liberty for many years and established substantial residential, family, and employment ties within the United States.

78. In 2023, Petitioner's immigration proceedings were reportedly dismissed, and ICE canceled his existing immigration bond. Rather than treating Petitioner as an immediate danger or flight risk, Respondents allowed him to remain in the community following that administrative action.

79. Nevertheless, on April 21, 2026, Respondents apprehended and re-detained Petitioner during a planned enforcement operation. The facts presently available do not identify any pre-deprivation hearing at which Petitioner could contest the asserted justification for withdrawing his liberty.

80. **Private Interest:** Petitioner's longstanding release, stable residence, family relationships, and employment history demonstrate the substantial private liberty interest affected by Respondents' decision. His detention separates him from his United States citizen spouse, daughter, and son, and prevents him from continuing his established employment.

81. **The risk of erroneous deprivation:** The risk of erroneous deprivation is substantial because the record presently available does not identify any new circumstances demonstrating that Petitioner had become a danger to the community or a flight risk. Nor does the record establish that a neutral decisionmaker considered the continuing relevance of Petitioner's previous immigration bond determination.

82. **Government Interest:** The Government undoubtedly possesses a legitimate interest in enforcing immigration law and ensuring attendance at removal proceedings. However, that interest must be balanced against Petitioner's established liberty interest and the availability of procedural safeguards before re-detention.

83. Under the circumstances alleged, Petitioner contends that Respondents violated his Fifth Amendment right to procedural due process by re-detaining him without adequate prior notice and a meaningful opportunity to challenge the asserted grounds for withdrawing his liberty.

84. Petitioner therefore respectfully requests immediate release and an order prohibiting further re-detention based on the same circumstances without constitutionally adequate notice and an opportunity to be heard, subject to any independently applicable lawful detention authority.

85. Accordingly, Petitioner's continued detention violates the Fifth Amendment right to procedural due process.

86. This absence of process violated Petitioner's right to procedural due process under the Fifth Amendment.

/ / /

/ / /

/ / /

/ / /

/ / /

**COUNT THREE**

***Violation of Fifth Amendment Right to Due Process***

***Substantive Due Process***

***(Arbitrary and Retaliatory Detention)***

87. Petitioners repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

88. The substantive component of the Fifth Amendment's Due Process Clause protects against arbitrary governmental action that deprives a person of liberty. Executive action violates substantive due process when it is so arbitrary or egregious that it constitutes an abuse of governmental power in the constitutional sense. *County of Sacramento v. Lewis*, 523 U.S. 833, 845–47 (1998).

89. The Government has identified ensuring appearance at immigration proceedings and protecting the community as principal regulatory interests supporting civil immigration detention. *Zadvydas*, 533 U.S. at 690–91.

90. Here, Respondents previously released Petitioner pursuant to a bond determination by an immigration judge. Petitioner subsequently remained in the United States for years, resided at an identifiable address with his family, and maintained consistent employment in the landscaping industry.

91. Furthermore, Respondents were familiar with Petitioner’s immigration history and last known residential address before conducting the enforcement operation on April 21, 2026. His apprehension was not the result of an unexpected encounter or an attempt by Petitioner to evade immigration authorities.

92. Despite this longstanding history, Respondents re-detained Petitioner under circumstances that have not been shown to involve any new conduct establishing danger, imminent flight, or an urgent necessity for physical confinement.

93. Petitioner’s prior release, established residence, family relationships, and employment history are material considerations in assessing whether his

present detention is reasonably related to a permissible civil immigration purpose. The failure to identify any changed circumstances supporting confinement raises a substantial question whether Respondents have exercised their detention authority arbitrarily.

94. Petitioner does not contend that a prior bond determination permanently immunizes him from lawful immigration detention. Rather, Petitioner challenges Respondents' alleged exercise of detention authority without a demonstrated, constitutionally adequate basis for withdrawing his longstanding liberty.

95. To the extent that Petitioner's confinement is maintained without an applicable statutory justification or legitimate civil detention purpose, and notwithstanding the absence of any demonstrated material change in circumstances, Petitioner contends that his continued detention violates the substantive component of the Fifth Amendment.

96. Petitioner therefore respectfully requests that the Court order his release upon a determination that his continued confinement is arbitrary, constitutionally unjustified, and not reasonably related to a lawful civil immigration detention purpose.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this court:

a. Assume jurisdiction over this matter;

b. Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from Custody

c. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

d. Order further relief as this Court deems just and appropriate

Respectfully Submitted,

Dated: 10/09/2026

*/s/ Ron Quijada*

Ron Quijada (SBN: 363736)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com

**VERIFICATION PURSUANT TO 28 U.S.C. 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Respectfully Submitted,

Dated: 10/09/2026

*/s/ Ron Quijada*

Ron Quijada (SBN: 363736)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com

# LIST OF EXHIBITS

**Exhibit 1 – I-213 Record of Deportable Alien**