UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CARLOS ARQUIME PORTILLO NUNEZ,
Petitioner,
v.
FERETI SEMAIA, et al.,
Respondents.

Case No. 5:26-cv-06008-KES

ORDER DENYING THE PETITION

## I. INTRODUCTION

Carlos Arquime Portillo Nunez ("Petitioner") filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 9), and Petitioner replied ("Reply" at Dkt. 10). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 8.)

For the reasons explained below, Ground 1 of the Petition is denied, and Grounds 2 and 3 are dismissed without prejudice.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Prior Entry Without Inspection and Removal Order (1991-2008).

Petitioner is a native and citizen of El Salvador. (Pet. at 4, ¶ 18.) Petitioner entered the U.S. without inspection in 1991. (Pet. at 4, ¶ 22.) On December 3, 2008, an immigration judge ("IJ") denied his asylum application and ordered him removed to El Salvador. (Pet. at 5, ¶ 24; Pet. Ex. A / Dkt. 1-1 at 2-3 (DHS Form I-213).) DHS records indicate the removal order was entered in absentia and that he was not actually removed. (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).)

### B. Criminal Convictions for Sexual Offenses (2009-2014).

About seven months later, on July 13, 2009, the Indio Police Department arrested Petitioner on suspicion of violating California Penal Code § 261(a)(2), "rape: force/fear, a felony." (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).) Sometime thereafter, Petitioner "fled the U.S. to Mexico." (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).) About five years later, "[o]n January 31, 2014, Mexican officials turned over [Petitioner] to U.S. Customs and Border Protection," which "paroled [Petitioner] into the U.S." (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).)

On August 18, 2014, Petitioner was convicted in state court of lewd or lascivious acts with a child under California Penal Code § 288(c)(1) and sex with a minor under California Penal Code § 261.5(c). (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).) He was sentenced to 24 months in prison and 225 days in jail. (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).) It is unclear whether Petitioner ever served this sentence.

### C. Immigration Detention and Release on Bond (2014).

DHS records indicate that about a month later, on September 10, 2014, "the San Bernardino Pro-active Criminal Alien Program (PROCAP) Team arrested [Petitioner] in Indio, CA while conducting an at-large operation to locate [him]." (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213); see also Pet. at 5, ¶ 25 (alleging that Petitioner was arrested by ICE on September 10, 2014).)

On September 30, 2014, an IJ ordered Petitioner released on a $5,000 bond. (Pet. at 5, ¶ 25.) Petitioner posted bond and was released. (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).)[1]

**D. Approval of Wife's Petition and Dismissal of Immigration Proceedings (2015-2023).**

Petitioner alleges that he has resided at the same address in Desert Hot Springs, California since 2015. (Pet. at 4, ¶ 19.) He lives there with his U.S.-citizen wife and two children. (Pet. at 4, ¶ 19.) He works as a landscaper. (Pet. at 4, ¶ 20.)

On November 7, 2016, Petitioner's wife filed a Form I-130 Petition for Alien Relative on his behalf, and that petition was approved on March 29, 2018. (Pet. at 5, ¶ 27; Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).)

On November 19, 2019, Petitioner filed a Form I-485 Application to Register Permanent Residence with USCIS. (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).) On December 19, 2019, USCIS rejected Petitioner's I-485. (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).) The current record does not explain why USCIS rejected the application.

Despite the rejection, on July 12, 2023, an IJ dismissed Petitioner's immigration proceedings. (Pet. at 5, ¶ 28; Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).) On August 9, 2023, ICE "canceled [Petitioner's] bond due to his immigration proceedings being dismissed." (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).) The practical import of the bond cancellation remains unclear, because Petitioner remained at liberty living in Desert Hot Springs, California.

---

[1] Petitioner's DHS Form I-213 indicates that he was released on September 6, 2014, but this appears to be a typographical error, because elsewhere the same form says Petitioner was not even arrested until September 10, 2014.

**E. Conviction for Vehicle Theft (2025).**

About two years later, on April 2, 2025, Petitioner was convicted of misdemeanor vehicle theft under California Vehicle Code § 10851(a) and sentenced to five days in jail. (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213).)

**F. Current Detention (April 21, 2026).**

About a year later, on April 21, 2026, ICE conducted "a fugitive operation to locate" Petitioner "at his last known address," i.e., the address where Petitioner states he has lived with his family since 2015. (Pet. Ex. A / Dkt. 1-1 at 2 (DHS Form I-213).) Officers observed Petitioner exit his home and get into his car. (Pet. Ex. A / Dkt. 1-1 at 2 (DHS Form I-213).) Petitioner states he was driving to work. (Pet. at 5, ¶ 30.) The officers pulled over Petitioner's car and, after confirming his identity, arrested him "without incident." (Pet. Ex. A / Dkt. 1-1 at 2 (DHS Form I-213).)

On the date of his arrest, DHS issued a notice to appear ("NTA") charging Petitioner with removability under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Pet. Ex. A / Dkt. 1-1 at 3 (DHS Form I-213) (stating ICE "served [Petitioner] with an [NTA], Form I-862, charging removability pursuant to Section 212(a)(7)(A)(i)(I) of the INA"); see also Pet. at 6, ¶ 33 ("After Petitioner was arrested by ICE, he was issued [an NTA] and charged removability pursuant to section 212(a)(7)(A)(i)(I).").)[2] This INA section makes a noncitizen removable if they are "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document…." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

DHS also issued an administrative arrest warrant alleging there was probable cause to believe Petitioner is removable from the U.S. based on "the execution of a charging document to initiate removal proceedings against [Petitioner]" and

---

[2] Neither party has filed a copy of the actual NTA.

"statements made voluntarily by the subject to an immigration officers and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (Answer Ex. B / Dkt. 9-2.) According to the warrant's certificate of service, it was served on Petitioner the day of his arrest. (Id.)

**G. Status of Immigration Proceedings.**

Petitioner remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 071-585-425 (El Salvador); last accessed Oct. 27, 2026). As of the date of this order, Petitioner's removal case remains pending with an individual hearing scheduled for November 13, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 071-585-425 (El Salvador); last accessed Oct. 27, 2026).

**H. Habeas Proceedings.**

Petitioner filed the present Petition on October 9, 2026. (Dkt. 1.) The Petition raises the following claims:

Ground 1: Respondents violated 8 U.S.C. §§ 1226(a) and 1357(a)(2) by arresting him without a warrant, even though there was no evidence that he was likely to escape before one could be obtained. (Pet. at 11-13, ¶¶ 56-70.)

Ground 2: Respondents violated Petitioner's Fifth Amendment procedural due process rights by arresting him without a pre-deprivation hearing. (Pet. at 13-15, ¶¶ 71-86.)

Ground 3: Petitioner's detention violates his Fifth Amendment substantive due process rights because he is not a danger to the community or a flight risk. (Pet. at 16-17, ¶¶ 87-96.)

On October 19, 2026, DHS served Petitioner's immigration counsel with notice that he would have a custody redetermination hearing (i.e., a bond hearing) before an IJ on October 30, 2026. (Answer Ex. C / Dkt. 9-3.) Respondents explain

that this is a Rodriguez bond hearing, scheduled because Petitioner has been in ICE detention for more than six months. (Answer at 2.)[3]

On October 22, 2026, Respondents answered the Petition. (Id. at 1.) They oppose Petitioner's release due to his criminal convictions. (Id. at 2.) They argue, "Because the administrative remedy of a Rodriguez bond hearing is available, which provides Petitioner more protection than a bond hearing under 8 U.S.C. § 1226(a) which he is not eligible for given his mandatory detainee status, he cannot show that his detention has become so prolonged as to implicate a constitutional interest nor that a sooner bond hearing is necessary." (Id. at 2.) They "request that the Court deny the petition or stay adjudication until the Rodriguez bond hearing has taken place." (Id. at 3.)

Petitioner replied on October 26, 2026. (Dkt. 10.) He argues that the administrative arrest warrant did not properly authorize his arrest. (Id. at 2-3.) He "denies that he is subject to mandatory detention," arguing that Respondents "identify no statute that mandates his detention, and the only charge lodged against him is inadmissibility under INA § 212(a)(7)(A)(i)(I) for lack of entry documents," not any "criminal ground of inadmissibility…." (Id. at 3.)[4] He admits that a Rodriguez bond hearing is set for October 30, 2026, but he argues that this hearing cannot "adjudicate, or remedy, the unlawful arrest challenged in this Petition." (Id.

[3] "Named after the Ninth Circuit's decision in Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), which has an extensive history that need not be recounted here, a Rodriguez bond hearing is a periodic custody redetermination proceeding … where the government must show at six-month intervals that a detainee's continued detention pending removal proceedings is justified by clear and convincing evidence of flight risk or danger to the community." Penaloza Monsalve v. Semaia, No. 26-cv-00463-SVW-ACCV, 2026 WL 1625352, at *1 n.1 2026 U.S. Dist. LEXIS 121961, at *2 n.1 (C.D. Cal. June 1, 2026).

[4] Although the Answer is somewhat unclear, Respondents appear to be arguing that Petitioner's 2025 conviction for vehicle theft subjects him to mandatory detention under 8 U.S.C. § 1226(c).

at 4.)

## III. DISCUSSION

### A. <u>Ground 1 is Denied.</u>

In Ground 1 of the initial Petition, Petitioner argued, "Notwithstanding [the ICE officers'] advance knowledge [of Petitioner's history and whereabouts], the Form I-213 does not identify an arrest warrant issued before Petitioner's apprehension. Based on the records presently available, ICE officers arrested him without first obtaining an administrative arrest warrant." (Pet. at 12, ¶ 63.) He argued, "The planned nature of the operation further undermines any contention that Respondents lacked a reasonable opportunity to obtain an administrative arrest warrant. Having identified Petitioner and his last known residence in advance, ICE could have pursued the ordinary administrative warrant process instead of relying on the limited exception [for warrantless arrests] authorized by [8 U.S.C.] § 1357(a)(2)." (<u>Id.</u> at 12, ¶ 66.)

Respondents' Answer attached a copy of an administrative arrest warrant issued the same date as Petitioner's arrest, with a certificate of service indicating it was served on Petitioner the same day. (Answer Ex. B / Dkt. 9-2.) Petitioner's Reply does not appear to dispute the accuracy of that certificate. Instead, the Reply argues that the warrant must have been issued after Petitioner's arrest, because it was not served on Petitioner until after he arrived at the ICE detention facility in San Bernardino. (Reply at 5-6.) The Court is unconvinced that service of the warrant minutes or hours after Petitioner's arrest necessarily means that the warrant was not issued until after his arrest. In the cases cited in Petitioner's Reply, in contrast, there was either no evidence that an arrest warrant had issued or the government had not produced a copy of the warrant. <u>See</u>, <u>e.g.</u>, <u>Martinez v. Mullin</u>, No. 26-cv-3850-MAR, Dkt. 17 at 5-6 (C.D. Cal. Oct. 2, 2026) ("Respondents did not include a copy of a warrant in the exhibits attached to the Answer. … Respondents attached Petitioner's Form I-213 file, which does not

indicate that Respondents had a 'warrant issued by the Attorney General' for Petitioner's arrest….”); Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility, No. 26-cv-05661, 2026 WL 2294963, at *3 (E.D. Cal. Aug. 10, 2026) (“even crediting the I-213's vague statements regarding the issuance of a notice to appear and warrant … , there is no evidence that respondent conducted an initial custody determination, that petitioner was ever provided an opportunity to demonstrate that he would not pose a risk of flight or danger to the community to an immigration officer, or that petitioner was provided with the basis for his ongoing detention”).

Given that Respondents' Answer attaches a copy of the administrative arrest warrant, and it is undisputed that the warrant was served on Petitioner shortly after he was arrested, Petitioner has not demonstrated that he is entitled to relief on Ground 1 of the Petition.

**B. Grounds 2 and 3 are Dismissed Without Prejudice.**

In Ground 2, Petitioner argues that Respondents violated his Fifth Amendment procedural due process rights by arresting him without a pre-deprivation hearing. (Pet. at 13-15, ¶¶ 71-86.) In Ground 3, Petitioner argues that his detention violates his Fifth Amendment substantive due process rights because he is not a danger to the community or a flight risk. (Id. at 16-17, ¶¶ 87-96.)

As noted above, after the Petition was filed, DHS scheduled a Rodriguez bond hearing for October 30, 2026. At that hearing, the government bears the burden of demonstrating, by clear and convincing evidence, that Petitioner is a flight risk or a danger to the community. See Penaloza Monsalve, 2026 WL 1625352, at *1 n.1 2026 U.S. Dist. LEXIS 121961, at *2 n.1. Petitioner argues that, if the IJ agrees with Respondents that Petitioner is subject to mandatory detention under § 1226(c), then the IJ will find that he or she “lacks authority to

redetermine custody … beyond a threshold Joseph inquiry." (Reply at 12.)[5] However, based on past practice in this District, it is this Court's understanding that the government generally provides substantive Rodriguez bond hearings to all detainees after six months of detention, even if the detainee is subject to § 1226(c). Whether this hearing is held promptly, and what analysis the IJ conducts at the hearing, could materially affect the Constitutional claims raised in Grounds 2 and 3. See generally Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (providing that, in analyzing due process claims, courts should consider "the value of additional procedural safeguards" and "the countervailing government interest").

Accordingly, Grounds 2 and 3 are dismissed without prejudice to Petitioner filing a new habeas petition raising these claims (or any other applicable claims) after the Rodriguez bond hearing takes place on October 30, 2026.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Ground 1 of the Petition is denied, and Grounds 2 and 3 are dismissed without prejudice.

DATED: October 28, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[5] See generally Rodriguez v. Robbins, 804 F.3d 1060, 1078-79 (9th Cir. 2015) ("An individual detained under § 1226(c) may ask an IJ to reconsider whether the mandatory detention provision applies to him, see 8 C.F.R. § 1003.19(h)(2)(ii), but such review is limited in scope and addresses only whether the individual is properly included in a category of non-citizens subject to mandatory detention based on his criminal history. See generally In re Joseph, 22 I. & N. Dec. 799 (BIA 1999). At a 'Joseph hearing,' a detainee 'may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [DHS] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.'") (citation omitted).